IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDRE CRAVER,

      Plaintiff,                               No. 2: 11-cv-1344 MCE KJN P

   vs.

J. HASTY, et al.,                            <u>ORDER AND</u>

      Defendants.                      <u>FINDINGS & RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss for failure to exhaust administrative remedies filed September 23, 2011.  After carefully reviewing the record, the undersigned recommends that defendants' motion be denied.

        On October 13, 2011, plaintiff filed a motion to compel defendants to serve him with the motion to dismiss.  On October 17, 2011, defendants filed proof of service of the motion to dismiss on plaintiff.  On October 17, 2011, plaintiff filed his opposition.  Accordingly, plaintiff's motion to compel is denied as unnecessary.

////

////

## II. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 740 n.5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734. The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

However, a prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the

relief already granted as a result of that process.  Brown, 422 F.3d at 936-37.

As noted above, the PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court may look beyond the pleadings to determine whether a plaintiff exhausted his administrative remedies.  Id. at 1119-20.

Although exhaustion is mandatory, an inmate must only exhaust administrative remedies "as are available." 42 U.S.C. § 1997e(a).  Under the Ninth Circuit law, exhaustion is

excused when improper screening of grievances occurs. Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)). Sapp establishes that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under [§ 1997e(a)]." Id. at 823. If prison officials screen out an inmate's grievances or appeals for improper reasons, the inmate cannot pursue the necessary administrative process, and, consequently, his administrative remedies become "unavailable." Id.

III. Background

This action is proceeding on the original complaint filed May 18, 2011 as to defendants Hasty and Rayner. Plaintiff alleges that on February 1, 2011, he was in his cell at High Desert State Prison ("HDSP"). Plaintiff shared the cell with inmate Dicey. Defendants Hasty and Rayner appeared at the cell door and yelled, "t-shirts, shower shoes and boxers!" This signaled that a "raid" was about to occur. The cell water and electricity were turned off.

Plaintiff then approached the food portal. Inmate Dicey walked to the back of the cell and placed his toothbrush and toothpaste on a shelf. Defendant Rayner yelled at Dicey to get away from the shelf. Dicey told defendant Rayner that he was putting his toothbrush and toothpaste away. Defendant Rayner then began yelling profanities at Dicey, to which Dicey responded. Defendant Rayner stated that he was going to tear up the cell and destroy their personal property. Dicey told defendant Rayner that he had to urinate, and walked to the toilet.

Plaintiff stepped back to allow Dicey to get to the toilet. Defendant Rayner was now mad that he had to search a cell with urine in the toilet. Defendant Hasty ordered plaintiff to come to the tray slot, strip out and cuff up. Plaintiff began to comply with this order.

Dicey began urinating in front of defendant Rayner. Defendant Rayner became extremely upset and yelled, "Oh, you're going to disrespect me like that motherfucker!" Defendant Rayner then took out his pepper spray cannister and began spraying into plaintiff's and Dicey's faces. Plaintiff backed up, yelling in pain. Plaintiff's lungs became inflamed and he

1  had an asthma attack.  Plaintiff then noticed that defendant Hasty was also spraying pepper spray
2  into the cell.
3         Plaintiff was taken to a holding cell where he was held naked for four hours.
4  During this time, plaintiff continued to vomit, shake, cough and his skin, eyes and face burned.
5  IV.  <u>Analysis</u>
6         In the complaint, plaintiff alleges that he exhausted administrative remedies.  In
7  support of this claim, plaintiff refers to his exhibit B-1 which is an inmate appeal signed by
8  plaintiff on February 2, 2011, which addresses the incident alleged in the complaint.  (Dkt. 1 at
9  15.)  As relief, plaintiff sought an immediate transfer to Lancaster Prison and money damages.
10 (<u>Id.</u>)  This appeal does not contain any notation by prison officials.  (<u>Id.</u>)  Attached as plaintiff's
11 Exhibit D-1 is an Inmate Request for an Interview Form signed by plaintiff on February 9, 2011.
12 (<u>Id.</u> at 20.)  In this form, plaintiff states that on February 2, 2011, he filed an inmate grievance
13 regarding the incident alleged in the complaint but had heard nothing back.  (<u>Id.</u>)  The form
14 contains no notation by prison officials.
15        Attached to plaintiff's complaint as Exhibit D-2 is an Inmate Request for an
16 Interview Form dated by plaintiff on February 16, 2011.  (<u>Id.</u> at 21. )  In this form, plaintiff again
17 states that his inmate grievance submitted on February 2, 2011 had not been responded to.  (<u>Id.</u>)
18 The form contains no notation by prison officials.
19        Attached to plaintiff's complaint as Exhibit D-3 is an Inmate Request for an
20 Interview Form dated by plaintiff on February 20, 2011.  (<u>Id.</u> at 22.)  In this form, plaintiff again
21 states that his inmate grievance submitted on February 2, 2011, had not been responded to.  (<u>Id.</u>
22 at 22.)  This form contains no notation by prison officials.
23        Defendants argue that plaintiff failed to exhaust administrative remedies.  In
24 support of this motion, defendants submitted the declaration of D. Clark, the Appeals
25 Coordinator at HDSP.  According to D. Clark, the Appeals Office did not receive an appeal
26 regarding plaintiff's allegations of excessive force against defendants Raynor and Carver until

1  February 23, 2011.  (Dkt. No. 22-2 at 3 of 13.)  On that date, the appeal was processed and
2  forwarded to the Hiring Authority at HDSP to determine if it should be converted to a staff
3  complaint.  (Id.)  On February 24, 2011, the appeal was returned to the Appeals Office because
4  the Hiring Authority determined that it should be processed as a general appeal.  (Id.)
5          D. Clark states that plaintiff's appeal, originally submitted on February 23, 2011,
6  was screened out on February 24, 2011, by the Appeals Office pursuant to California Code of
7  Regulations, Title 15, § 3084.6(b)(2).  (Id.)  D. Clark states that section 3084.6(b)(2) requires that
8  an appeal be screened out if the appellant has failed to demonstrate a material adverse affect on
9  his or her welfare as defined in subsection 3084(c).  (Id.)  D. Clark states that though the Appeals
10 Office did not retain a copy of plaintiff's screened out appeal, based upon its rejection criteria,
11 the appeal must not have alleged that plaintiff had been harmed at all.  (Id.)
12         D. Clark also states that she reviewed the exhibits attached to plaintiff's complaint
13 which he claims demonstrate proof of exhaustion.  (Id.)  Plaintiff claims to have filed an
14 administrative appeal regarding the incidents alleged in the complaint on February 2, 2011.  (Id.)
15 D. Clark states that the Appeals Office did not receive this appeal.  (Id.)  D. Clark states that
16 when an appeal is received, it is immediately stamped and dated, and if it is not screened out, it is
17 provided a log number.  (Id.)  D. Clark states that the appeal attached to plaintiff's complaint is
18 not stamped or dated, and it does not have a log number.  (Id.)
19         D. Clark further states that she has reviewed the exhibits attached to the complaint
20 which are Inmate Requests for Interviews.  (Id. at 4.)  D. Clark states that when Inmate Requests
21 for Interviews are received by the Appeals Office, the date of receipt is immediately entered onto
22 the document under the section titled "Received By."  (Id.)  A copy of the form is provided to the
23 inmate.  (Id.)  D. Clark states that the Inmate Request for Interview forms submitted by plaintiff
24 are not stamped or dated.  (Id.)
25         In his opposition, plaintiff claims that defendants have misrepresented his appeals.
26 Attached as exhibit A-3 to plaintiff opposition is a copy of plaintiff's February 20, 2011 Inmate

1  Request for Interview Form.  (Dkt. No. 27 at 10.)  In this form, plaintiff states that on February 2,
2  2011, he submitted an appeal regarding the incident alleged in the complaint but heard no
3  response.  (Id.)  This form contains a notation by prison officials, unlike the form submitted as an
4  exhibit to the complaint.  In the section of the form titled "Staff Response," P. Statti wrote,
5  "Your staff complaint appeal was received by the appeals' office."  (Id.)  This response is dated
6  February 25, 2011.  (Id.)

7  Plaintiff also argues that the grievance returned to him for not alleging an adverse
8  effect concerned double celling rather than the incident alleged in the complaint.  Attached as an
9  exhibit to the opposition is a copy of an Inmate Appeal Screening Form dated February 24, 2011,
10  by P. Statti.  (Id. at 12.)  Although the form does not describe the grounds of the appeal it
11  addresses, it states that plaintiff's appeal was returned because it alleged no adverse effect.  (Id.)
12  P. Statti also handwrote on the form, "This has been determined by the Hiring Authority not to be
13  a staff complaint."  (Id.)

14  Attached to plaintiff's opposition as exhibit B-2 is a copy of the grievance
15  plaintiff claims was screened out for not alleging an adverse effect.  This grievance was signed
16  by plaintiff on February 21, 2011.  (Id. at 13.)  In this grievance, plaintiff describes the incident
17  on which the instant action is based.  (Id.)  As relief, plaintiff requests permanent single cell
18  status and money.  (Id.)  This grievance contains notations on the bottom stating "2/23/11 – to
19  CDW, 2-24-11 – not S/C."  Based on these notations, it appears likely that this was the grievance
20  screened out for failing to allege an adverse effect.  According to J. Hasty, the Appeals Office
21  received the screened-out appeal on February 23, 2011, and on February 24, 2011, the Hiring
22  Authority determined that it was not a staff complaint.

23  In their reply, defendants attach the declaration of P. Statti.  In this response, P.
24  Statti states that in her February 25, 2011 response to plaintiff's February 20, 2011 Inmate
25  Request for an Interview, she was not referring to an appeal received on February 2, 2011.  (Dkt.
26  No. 29 at 3.)  P. Statti states that she was referring to plaintiff's appeal submitted on February 23,

1  2011. It is unclear to the undersigned how P. Statti is able to determine approximately eight
2  months later to which appeal she was referring in that form.
3        Turning to the merits of defendants' motion to dismiss, defendants argue that
4  plaintiff failed to exhaust administrative remedies because the grievance he filed on February 23,
5  2011, regarding defendants' alleged use of excessive force was screened out for failing to
6  demonstrate a material adverse effect on plaintiff's welfare.
7        California Code of Regulations, Title 15, section 3084(c) defines "material
8  adverse effect" as,

> a harm or injury that is measurable or demonstrable, or the
> reasonable likelihood of such harm or injury. In either case, the
> harm or injury must be due to any policy, decision, action,
> condition, or omission by the department or its staff.

12       It is difficult to imagine how plaintiff could discuss his allegations regarding
13 defendants without alleging a material adverse effect. The grounds of plaintiff's claim against
14 defendants are that they used excessive force by improperly spraying plaintiff with pepper spray.
15 Plaintiff's February 21, 2011 grievance, which appears to be the screened out grievance, states
16 that defendants sprayed him with two canisters of pepper spray, which placed plaintiff's life in
17 danger. (Dkt. No. 27 at 13.) Plaintiff goes on to state that he has asthma. (Id.)
18       For the reasons set forth above the undersigned finds that defendants' claim that
19 the screened out grievance, filed on or around February 21, 2011, did not allege an adverse effect
20 is not supported by the record. Based on this finding, the undersigned need not further address
21 the issue of whether plaintiff filed a grievance on February 2, 2011.
22       Accordingly, the undersigned finds that plaintiff's grievance, filed on or around
23 February 21, 2011, was improperly screened out for failing to allege an adverse effect. Plaintiff's
24 exhaustion of administrative remedies is excused and defendants' motion to dismiss should be
25 denied. See Sapp v. Kimbrell, supra.
26 ////

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to compel (Dkt. No. 25) is denied; and

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (Dkt. No. 22) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 18, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

cr1344.mtd