UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE CRAVER,<br><br>         Plaintiff,<br><br>     v.<br><br>J. HASTY, et al.,<br><br>         Defendants. | No. 2:11-cv-1344 TLN KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action is set for jury trial before the Honorable Troy L. Nunley on September 28, 2015. This action is proceeding to trial on plaintiff's claim that on February 2, 2011, while housed at High Desert State Prison ("HDSP"), defendants Raynor and Hasty used excessive force in violation of the Eighth Amendment when they sprayed O.C. spray into plaintiff's cell during a cell search.

Pending before the court is plaintiff's May 11, 2015 motion for federal protection. (ECF No. 131.) For the following reasons, the undersigned recommends that this motion be denied.

<u>Plaintiff's Pending Motion</u>

On May 11, 2015, plaintiff filed the pending motion. At that time, plaintiff was housed at California State Prison-Lancaster ("Lancaster"). In this motion, plaintiff alleged that correctional officers at Lancaster told him that he was to be transferred to Pelican Bay State Prison ("PBSP").

1

The officers allegedly told plaintiff that the "move came from Sacramento, you pissed somebody off." Plaintiff claimed that he told the officers that he had a jury trial in Sacramento in September. In response, the officers allegedly said, "There it is...watch your back Craver, they're waiting for you."

On May 27, 2015, plaintiff filed a notice of change of address and status report. (ECF No. 133.) In this pleading, plaintiff stated that he was now housed at PBSP. Plaintiff also stated that he was sent to PBSP in order to receive the E.O.P mental health level of care. Plaintiff alleged that he was discharged from a PBSP crisis bed on May 18, 2015, and immediately informed prison officials that his life was in danger. After his release from the crisis bed, plaintiff alleged that he was reclassified to the CCCMS level of care, which allowed custody staff to place plaintiff on the "A" yard, which is known as the "war zone." Plaintiff alleged that the psychologist changed his mental health status without examining him.

In the May 27, 2015 pleading, plaintiff goes on to state that he is in fear of an ambush. Plaintiff alleges that because he is back in the general population, "they" can persuade the active gangbang inmates to attack him. Plaintiff alleges that he is now under severe stress. Plaintiff states that he will not let these people kill him. Plaintiff states that he will kill himself before "these people" kill him. Plaintiff states that he will hang himself rather than be housed at PBSP waiting to be attacked.

Legal Standard

No defendants are located at PBSP. Usually persons or entities not a party to an action are not subject to orders for injunctive relief. Zenith Radio Corp. v. Hazaletine Research, Inc., 395 U.S. 100 (1969). However, the fact that one is not a party does not automatically preclude the court from acting. The All Writs Act, 28 U.S.C. § 1651, permits the court to issue writs "necessary or appropriate in aid of their jurisdiction and agreeable to the usages and principles of law." See generally S.E.C. v. G.C. George Securities, Inc., 637 F.2d 685 (9th Cir. 1981); United States v. New York Telephone, 434 U.S. 159 (1977). This section does not grant the court plenary power to act in any way it wishes; rather, the All Writs Act is meant to aid the court in the exercise and preservation of its jurisdiction. Plum Creek Lumber Company v. Hutton, 608 F.2d

2

1283, 1289 (9th Cir. 1979.)

Discussion

On May 29, 2015, the undersigned directed the PBSP Warden to file a status report addressing plaintiff's mental health classification, whether plaintiff was appropriately housed in the general population and plaintiff's safety concerns. (ECF No. 134.)

On June 5, 2015, the Warden filed a status report. (ECF No. 136.) Attached to the status report is the declaration of Dr. Limon, Senior Psychologist at PBSP. (ECF No. 136-1.) Dr. Limon states, in relevant part,

> 2. I am one of seven mental health clinicians, including a psychiatrist, who have been working with Inmate Craver since he arrived at PBSP.
>
> 3. Inmate Craver was endorsed to PBSP as Enhanced Outpatient Program (EOP) status.
>
> 4. When he arrived at PBSP, he was immediately sent to the Infirmary to a Mental Health Crisis Bed (MHCB).
>
> 5. While at the Infirmary, Inmate Craver's mental health status was reduced from EOP to Correctional Clinical Case Management (CCCMS), making him eligible for classification committee review for placement in the PBSP General Population (GP) following release from the MHCB.
>
> 6. Inmate Craver's level of care was categorized as CCCMS because it was determined that his mental health crisis had been treated and any remaining constellation of mental health signs/symptoms did not constitute a major mental illness. Additionally, the reviewing treatment team determined that his high level of functioning following MHCB treatment was in line with CCCMS level of care as opposed to a higher level such as EOP.
>
> 7. Higher-functioning inmates who are inadvertently made EOP level of care may harass, intimidate, and pressure lower-functioning EOP inmates.
>
> 8. Inmate Craver was discharged to GP housing on May 18, 2015. Inmate Craver made a suicidal gesture causing him to be readmitted to the MHCB on May 20, 2015, where he remains pending further evaluation.
>
> 9. While in a MHCB, Inmate Craver has access to twenty-four hour nursing care, as well as therapy and counseling.
>
> 10. Inmate Craver has stated to staff that he is not safe in GP. This information was forwarded to custodial staff for review. It is my understanding that Inmate Craver did not provide sufficient

3

> information to custodial staff to preclude him from placement in GP housing.
>
> 11. Mental Health Staff determine the level of mental health care and pass information representing a risk of safety and security to the appropriate authorities. Inmate Craver's safety concerns were deferred to custody for further action.

(Id. at 1-2.)

The Warden has also provided the declaration of PBSP Correctional Counselor ("CC") Walch. (ECF No. 136-2.) CC Walch states, in relevant part,

> 10. Inmate Craver has stated to staff that he is not safe in GP, but Inmate Craver cannot identify any specific enemies on the grounds or any specific reason why he is unsafe in general population.
>
> 11. Given the threats Inmate Craver made against staff and other inmates, it has been recommended that Inmate Craver be placed in the Administrative Segregation Unit (ASU) upon his release from the infirmary until a decision can be made as to permanent housing.

(Id. at 2.)

After reviewing the declarations of Dr. Limon and CC Walch, the undersigned finds that injunctive relief pursuant to the All Writs Act is not warranted. Plaintiff was transferred to PBSP after being classified as requiring the EOP level of care. This classification was "inadvertent," as plaintiff was reclassified as requiring the CCCMS level of care shortly after his transfer to PBSP, making him eligible for housing in the general population. These circumstances apparently fueled plaintiff's allegations that his transfer to PBSP was retaliatory.

However, it is clear from CC Walch's declaration that officials at PBSP are aware of plaintiff's security concerns. According to CC Walch, plaintiff's security concerns cannot be substantiated because plaintiff is unable to identify any specific enemies or give specific reasons why he is unsafe in the general population.

Because plaintiff's safety concerns cannot be substantiated, and because plaintiff is currently housed in administrative segregation rather than the general population, plaintiff's motion for federal protection should be denied.[1]

---

[1] Plaintiff has previously filed motions alleging fears of attack by prison officials. On September 30, 2013, while housed at Lancaster, plaintiff filed a motion for federal protection alleging that

Accordingly, IT IS HEREBY ORDERED that the Clerk shall serve a copy of this order on Deputy Attorney General Andrea Sloan; and

IT IS HEREBY RECOMMENDED that plaintiff's motion for federal protection (ECF No. 131) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 17, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cr1344.fed

---

prison officials made threatening comments to him.  (ECF No. 74.)  Invoking the All Writs Act, the court ordered the Lancaster Warden to file a response to these claims.  (ECF No. 76.)  After reviewing the Warden's response, on December 30, 2013, the court denied plaintiff's September 30, 2013 motion for federal protection.  (ECF No. 87.)

On June 18, 2014, plaintiff filed another motion for federal protection, alleging that prison officials at Lancaster had placed a "hit" on plaintiff.  (ECF No. 108.)  Invoking the All Writs Act, the court ordered the Lancaster Warden to file a response to this motion.  (ECF No. 109.)  After reviewing the Warden's response, on August 22, 2014, the court denied plaintiff's June 18, 2014 motion for federal protection.  (ECF No. 119.)